IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GARRICK POMALES SOTO,

    Plaintiff,

        v.

WILFREDO GUZMAN, *ET AL.*,

    Defendants.

**Civil No. 13-1026 (SEC)**

**OPINION & ORDER**

    Before the Court is Defendants' Motion for Summary Judgment and Memorandum of Law,[1] Docket ## 35 & 37; and Plaintiff's brief in opposition, Docket # 50. After reviewing the filings and the applicable law, this motion is **DENIED.**

    **Factual and Procedural Background**

    Garrick Pomales Soto (Plaintiff) was indicted on various drug charges by a Federal Grand Jury on February 10, 2011. Sometime later, he voluntarily surrendered to DEA agents, and was taken into custody. Plaintiff was then transferred to a DEA office in Guaynabo, Puerto Rico for further processing.

    At the DEA office, Plaintiff was placed in a room with DEA Agents Wilfredo Guzmán, José Meléndez, and Pedro Pérez. The parties' accounts of what transpired in that room differ significantly. For their part, Defendants state that Plaintiff "became agitated while listening to the [DEA agents'] explanation of the charges" brought against him. Docket # 37 at p. 2. At some point, Plaintiff allegedly "stood up, and slammed the table in front of him with his handcuffed hands." Id. Plaintiff denies this ever happened. In his deposition testimony, Plaintiff admitted that while he was indeed

---

[1] The co-defendants in this case are: the United States of America, Wilfredo Guzmán, Pedro Pérez, John Meléndez, and Dr. José Meléndez. They shall be collectively referred to as "Defendants."

unsettled by the federal charges brought against him, he nevertheless remained calm and was not agitated.[2]

At any rate, DEA agent Guzmán attempted to restrain Plaintiff, and a brawl ensued. According to Defendants, it took the three DEA agents in the room, plus various other agents standing just outside, to finally subdue Plaintiff. As a result of this fracas, one DEA agent suffered a "slight elbow injury," while another's ear was "slightly cut." See Docket # 37 at p. 3. Plaintiff fared worse, suffering a laceration on his knee and contusions on various parts of his body. Id. at p. 4; Docket # 49 at ¶¶ 16-18. The true extent of Plaintiff's injuries is hotly disputed by the parties.

On February 10, 2012, Plaintiff brought suit under 42 U.S.C. § 1983 alleging that the DEA officers had violated his constitutional rights by using excessive force in violation of the Fourth Amendment of the Constitution. *See* Civil Case # 12-1091 (JAF). Yet Plaintiff failed to properly serve process within the time limit set by the Federal Rules. The district court apprised Plaintiff that if "proper service is not made by July 16, 2012, the case [would] be dismissed for lack of timely service of process." *See Id.* at Docket # 11. Plaintiff again failed to serve process by the required deadline. True to its word, and upon the government's motion to dismiss under Rule 12(b)(5), the district court dismissed the complaint without prejudice on November 30, 2015. *See Id.* at Docket # 13.

Scarcely more than a month later, Plaintiff filed his complaint anew. This time, Plaintiff completed service of process within the required deadline. Following discovery, the government moved for summary judgment on three grounds: 1) that the complaint is time barred; 2) that Plaintiff failed to present sufficient evidence to sustain his excessive force claim; and 3) that Defendants are entitled to qualified

---

[2] In his motion for summary judgment, Plaintiff further alleges that the DEA agents vigorously interrogated him, and that he refused to answer their questions because he had no lawyer present. See Docket # 50 at p. 2. Plaintiff also mentions that he repeatedly asked for legal assistance, but that his requests were denied. Id. But these worrisome allegations are not supported by any reference to the record, and so the Court must disregard them.

immunity.³ In response, Plaintiff filed a brief that barely qualifies as a proper opposition.⁴ Despite Plaintiff's deficient briefing, the Court finds that Defendants' motion must be denied.

**Standard of Review**

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir.1994), and yet must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam).

Once the movant properly configures a summary-judgment motion, the burden shifts onto the nonmovant—or "the party who bears the burden of proof at trial," Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014)—to "point to competent evidence and specific facts to stave off summary judgment." Tropigas de P.R., Inc. v.

---

³ The Court has rearranged the order in which these arguments were presented for ease of reading.

⁴ On each of the three arguments raised by Defendants, Plaintiff fails to discuss how applicable caselaw compels the denial of the motion for summary judgment. In fact, Plaintiff's entire response to the qualified immunity defense is that, in light of his deposition, Defendants are "all liable" for the damages he suffered. *See* Docket No. 50, p. 3. Of course, it is well-settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Nevertheless, even if Plaintiff had waived his opposition, the entry of summary judgment is not automatic. In NEPSK, Inc. v. Town of Houlton, 283 F.3d 1 (1st Cir. 2002), the First Circuit observed that Fed. R. Civ. P. 56 requires a district court to determine whether the entry of summary judgment is appropriate – that is, whether the moving party's submission shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. This holds true even if the opposing party has waived its response. Id. Consequently, the Court must forge on without the benefit of a well-developed opposition.

Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). So the nonmovant cannot rest on conclusory allegations and improbable inferences. Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Technologies GmbH, 781 F.3d 510, 516 (1st Cir. 2015). Neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997), nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. Failure to shoulder this burden "allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

### Applicable Law and Analysis

As a threshold matter, Defendants argue that under the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. §§ 2671, *et seq.*, also known as the Westfall Act, the United States should be substituted in this action in place of the federal defendants Guzmán and Pérez. To that end, the United States Attorney for the District of Puerto Rico has certified that at the time of the alleged conduct, agents Guzmán and Pérez were acting within the scope of their federal employment with the DEA. See Docket # 37-1. Plaintiff does not oppose Defendants' motion on this ground.

Under its very terms, the Westfall Act does not afford immunity to federal employees who are sued for alleged violations of the United States Constitution. *See* 28 U.S.C. § 2679(b)(2)(A); see also Sterling v. United States, 85 F.3d 1225, 1228 (7th Cir. 1996) ("The Westfall Act keeps the United States and its employees distinct in constitutional-tort cases."). Defendants posit that this case does not involve a constitutional tort, but rather a run-of-the-mill tort case for the negligent actions of the DEA officers. However, as discussed in further detail below, the Court finds that Plaintiff has a trialworthy claim against Defendants for their use of excessive force in violation of the Fourth Amendment. As a result, the Westfall Act's exception applies

and substitution is not warranted. The Court shall now address the merits of the Defendants' motion.

   A. <u>The Complaint is not time barred.</u>

The parties agree that the appropriate statute of limitations in this § 1983 suit is Puerto Rico's one-year period governing tort actions, 31 P.R. Laws Ann. § 5298(2). <u>Rodríguez-García v. Municipality of Caguas</u>, 354 F.3d 91, 96 (1st Cir. 2004). While Puerto Rico's statute of limitations governs, it is federal law that determines the date on which Plaintiff's claim accrues. <u>Rivera–Muriente v. Agosto–Alicea</u>, 959 F.2d 349, 353 (1st Cir. 1992). This occurs when the plaintiff "knows or has reason to know of the injury which is the basis for his claim." <u>Rodriguez Narvaez v. Nazario</u>, 895 F.2d 38, 41 n. 5 (1st Cir. 1990).

The parties do not dispute that Plaintiff's claim accrued on February 10, 2011, the date of the alleged beating. Thus, absent any tolling, Plaintiff had to file his complaint within one year of this date. And so he did; Plaintiff filed his complaint in federal court on February 10, 2012. But because he failed to serve process on the defendants – even after the district court extended the deadline – his claim was dismissed without prejudice. *See* Civil Case # 12-1091 (JAF), Docket # 13 at p. 4.

Defendants contend that the prior dismissal without prejudice of Plaintiff's complaint did not toll the statute of limitations on his claim. Consequently, the Defendants posit that Plaintiff's second Complaint is time barred. Plaintiff counters that his claim has not expired because under Puerto Rico law, the mere filing of an action tolls the applicable statute of limitations even where the Plaintiff has voluntarily dismissed the action without prejudice before the defendants have been summoned.

Defendants' position is untenable. Indeed, none of the cases they cite addresses the question presented here: whether the involuntary dismissal of Plaintiff's previous § 1983 action for lack of proper service tolled the applicable statute of limitations. Likewise, while Plaintiff's first steps in this analysis are correct (in that, under Puerto Rico law, the statute of limitations is tolled merely by the filing of a complaint), the

rest of his argument misses the mark. Here, contrary to the cases he cites, Plaintiff had his previous case involuntarily dismissed for failure to timely serve process. Thus, the Court picks up where the parties left off.

Section 1983 borrows the state's rules on tolling "unless they are inconsistent with the federal Constitution and law, or with the federal policy underlying § 1983." Lopez-Gonzalez v. Municipality of Comerío, 404 F.3d 548, 552 (1st Cir. 2005). Under Article 1873 of the Puerto Rico Civil Code, "a prescriptive period may be interrupted in one of three ways: by the institution of an action before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." Tokyo Marine & Fire Ins. Co. v. Perez & Cia., De Puerto Rico, Inc., 142 F.3d 1, 4 (1st Cir. 1998) (citing P.R. Laws Ann. tit. 31, § 5303) (internal punctuation marks omitted). Only the second method is applicable here, and so the Court will circumscribe its analysis accordingly.

Under Puerto Rico law, "the institution of an action in court is commonly held not only to interrupt the running of the applicable statute of limitations but, at least in the event of a voluntary or usual non-prejudicial dismissal of the original action, to cause the entire limitations period to run anew from the date the previous action came to a definite end." López-González v. Mun. of Comerío, 404 F.3d 548 (1st Cir. 2005) (emphasis added). This has colloquially been termed the Puerto Rico "restart rule." Id. The First Circuit has observed that this rule may "be in tension with common law and equitable principles under which an involuntary dismissal made without prejudice but as a sanction does not toll the statute of limitations." Rodriguez v. Suzuki Motor Corp., 570 F.3d 402, 408 (1st Cir. 2009)(emphasis added).

These tensions came to a boil in Lopez-Gonzalez. In that case, the plaintiffs repeatedly failed to abide with various court orders and also "failed to explain the legal theory of each plaintiff's case, which the judge stated 'should have been filed with the complaint.'" Lopez-Gonzalez, 404 F.3d at 550. "As a result of plaintiffs' misconduct, defendants lacked the information necessary to file a motion to dismiss on qualified

immunity grounds." Id. The district court ultimately dismissed the case without prejudice for plaintiffs' repeated failures to comply with its orders. Almost one year after the dismissal, the plaintiffs filed their claim again, which a second district court quickly dismissed. The First Circuit affirmed, holding that the circumstances surrounding the dismissal of the plaintiffs' previous § 1983 complaint warranted the suspension of Puerto Rico's restart rule, such that the statute of limitations was not tolled and the complaint was time barred. In so holding, the First Circuit emphasized the plaintiffs' lack of diligence and the strong federal policy of repose applicable to cases brought under § 1983. The circumstances of that case thus justified the application of "something less than Puerto Rico's restart tolling principle." Id.

Plaintiff's previous complaint was dismissed under similar circumstances as the one in Lopez-Gonzalez. Indeed, Judge Fusté had tough words for Plaintiff, who "not only [had] not shown good cause for his lack of proper service in satisfying both Rule 4(i)(A) and Rule 4(i)(1)(B), [but also] had more than a reasonable amount of time to cure his defective service." See Civil Case # 12-1091 (JAF), Docket # 18 at p. 4. Even so, after a thorough review of the record, the Court finds that Plaintiff's lack of diligence is not sufficiently egregious so as to justify a suspension of the "restart rule" here. In contrast to Lopez-Gonzalez, Plaintiff's conduct here did not impede Defendants from filing their qualified immunity defense in the previous case. Indeed, the complaint in this action is a carbon-copy of the one filed in the previous case, and Defendants have raised their qualified immunity defense without any hiccups here. Also different is the fact that Plaintiff re-filed his complaint just weeks after the previous one was dismissed. In doing so, Plaintiff avoided further injury to the federal policy of repose applicable to § 1983. For these reasons, the Court holds that the limited exception of Lopez-Gonzalez does not apply under the circumstances present here. Thus, the restart rule applies and Plaintiff's second complaint is not time barred.

A.  There are triable issues of fact on Plaintiff's excessive force claim

Section 1983 is not itself a source of substantive rights, but is rather a vehicle for vindicating rights conferred by the Constitution or laws of the United States. See Graham v. Connor, 490 U.S. 386, 393–94 (1989). In this case, Plaintiff claims that the DEA agents violated his Fourth Amendment right not to be subjected to excessive force while in their custody. To prove such a claim, Plaintiff must show that the DEA agents' use of force was objectively unreasonable under the circumstances. Fernandez-Salicrup v. Figueroa-Sancha, 790 F.3d 312, 326 (1st Cir. 2015).

Because this test "is not capable of "precise definition or mechanical application," courts must pay careful attention to the facts of each case. Bell v. Wolfish, 441 U.S. 520, 559 (1979). This includes assessing "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). At bottom, courts must "judge the "reasonableness of an officer's actions from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Fernandez-Salicrup, 790 F.3d at 326 (quotations and internal punctuation omitted).

Defendants claim that their use of force in this instance was eminently reasonable. In support of their argument, Defendants rely exclusively on the official report of the investigation authored by agent Pérez and approved by agent Guzmán.[5] See Docket # 36-2. This report states that Plaintiff "started to get agitated" when the DEA agents explained the nature of the federal accusation brought against him. Id. After some back-and-forth, Plaintiff "hit the table and stood up in an aggressive manner." Id. The agents attempted to restrain him, but Plaintiff got loose and hit Guzmán in the left ear with the handcuffs. In response, the agents wrestled Plaintiff to the ground and subdued him. Id.

---

[5] Contrary to Plaintiff's objection, the official report is not hearsay. It is admissible because it is either a public record, or a record of a regularly conducted activity. See Fed. R. Evid. 803(6) & (8).

Defendants submit that the agents used no more force than necessary to restrain Plaintiff. Certainly, the Fourth Amendment allows officers some leeway to use force in order to subdue an unruly individual. See Graham v. Connor, 490 U.S. 386, 396 (1989). But the problem is that Plaintiff's deposition testimony squarely contradicts the officers' purported justification for using any force at all. In his deposition, Plaintiff testified that he felt unsettled after hearing the reasons for which he had been arrested. See Docket # 36-1 at p. 15. Nevertheless, he remained "totally calm" and did not become agitated. Id. Under this version of events, which the Court must credit at this time, there is simply no justification for using any force on Plaintiff.

Moreover, even if he did become agitated or aggressive, Plaintiff's account dispels any notion that the use of force was reasonable under the circumstances. Courts have held that "gratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth Amendment." Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir. 2001) (collecting cases). In this case, after voluntarily turning himself in to the authorities, Plaintiff found himself handcuffed and surrounded by DEA agents in a small room. These agents, according to his testimony, "uttered obscene words" while beating him with punches, kicks, and even with metal objects. Id. at p. 17. This lasted almost half an hour. Id. at p. 8. No reasonable officer would consider any of this warranted if the goal was solely to restrain Plaintiff; thus, there is a trialworthy issue of fact on Plaintiff's excessive force claim. Thus, Defendants' motion for summary judgment on this ground is denied.

As a final point, the Court cannot pass without noting various glaring inconsistencies in the parties' respective accounts. For instance, it is difficult to believe that a person who voluntarily turns himself over to the authorities would react violently upon hearing the reasons for which he was arrested. On the other hand, while Plaintiff claims that he was beaten for twenty-five minutes with blunt metal objects, the extent of his injuries seem to belie this claim. But, it is not for the Court at this stage to weigh evidence and assign credibility. See Greenburg v. Puerto Rico Mar.

Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987)(Rule 56 permits "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the carapace of the cold record."). That task belongs to the jury.

    B. <u>The officers are not entitled to qualified immunity</u>

While Defendants provide an extensive summary of the law concerning qualified immunity, they have wholly declined to provide any developed analysis as to how it applies in this case. Indeed, the only thing that comes close is their contention that the allegations contained in the second amended complaint are generic because Plaintiff fails to "specify the personal involvement or participation of each Defendant in any of the alleged constitutional violations." <u>See</u> Docket # 37 at p. 5. But we are past the pleadings, and Plaintiff's deposition testimony provides ample details concerning the personal involvement of each of the DEA agents sued in this case. "Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority." <u>Rodríguez v. Munic. of San Juan</u>, 659 F.3d 168, 175 (1st Cir. 2011). Defendants have done none of this. As a result, the Court has no option but to deny Defendants' motion for summary judgment on this ground.

Yet, even if the issue had been adequately briefed, the Court fails to see how Defendants could argue for immunity here. As it stands, the conduct at issue presents "such an obvious violation of the Fourth Amendment's general prohibition on unreasonable force that a reasonable officer would not have required prior case law on point to be on notice that his conduct was unlawful." <u>Jennings v. Jones</u>, 499 F.3d 2, 17 (1st Cir. 2007); <u>see also</u> <u>Gilmere v. City of Atlanta</u>, 774 F.2d 1495, 1501 (11th Cir. 1985), cert. denied, 476 U.S. 1115 (1986) (officers liable if a beating occurs "with little or no provocation" and "the blows were not delivered in good faith effort to control ..., but rather out of irritation").

**Conclusion**

For the reasons stated above, Defendants' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of September, 2015.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge